DJW/bh

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| **IN RE: CESSNA 208 SERIES AIRCRAFT PRODUCTS LIABILITY LITIGATION** | **MDL No: 1721** |
| **This Document Relates Only to:** **Ingram, et al. v. Cessna Aircraft Company, et al.,** Case No. 05-2531; **Emmons, et al. v. Cessna Aircraft Company, et al.,** Case No. 05-2532; **Morris, et al. v. Cessna Aircraft Company, et al.,** Case No. 05-2533;and **Villanueva, et al. v. Cessna Aircraft Company, et al.,** Case No. 05-2534 | Case No: 05-md-1721-KHV-DJW |

_____

## MEMORANDUM AND ORDER

Pending before the Court are the Motions for Leave to File Amended Complaints (doc. 76-79) filed in the above-cited cases. For the reasons set forth below, the Court will deny the motions without prejudice.

**I.     Background Information**

This is a multidistrict product liability action brought against various Defendants, including Cessna Aircraft Company ("Cessna"). The action arises out of various crashes of Cessna Caravans, Model 208B. Pursuant to 28 U.S.C. § 1407, the Judicial Panel on Multidistrict Litigation transferred these cases to the District of Kansas on December 12, 2005, for coordinated or consolidated pretrial proceedings.[1]

---

[1] *See* Transfer Order (doc. 1).

Plaintiffs have filed separate motions seeking leave to amend their complaints to add a claim of fraud against Cessna. Some of the Plaintiffs also seek leave to add a claim for punitive damages against Cessna based on the alleged fraud.

Cessna opposes the motions to amend, arguing that allowing the amendments would be futile because they cannot withstand a motion to dismiss. More specifically, Cessna asserts that Plaintiffs have failed to allege two required elements of their proposed fraud claims: (1) Cessna's intent to defraud, and (2) Plaintiffs' reliance on the alleged fraud. Cessna also asserts that those Plaintiffs who are seeking leave to add claims for punitive damages have failed to allege sufficient facts to support those claims.

## II.     Standard for Ruling on a Motion to Amend

Rule 15 of the Federal Rules of Civil Procedure allows a party to amend the party's pleading once as a matter of course before a responsive pleading is served.[2] Subsequent amendments are allowed only by leave of court or by written consent of the adverse party.[3] Leave to amend, however, is to be "freely given when justice so requires,"[4] and the Supreme Court has emphasized that "this mandate is to be heeded."[5] The decision to grant leave to amend, after the permissive period, is within the district court's discretion and will not be disturbed absent an abuse of that discretion.[6]

---

[2] Fed. R. Civ. P. 15(a).

[3] *Id.*

[4] *Id.*

[5] *Foman v. Davis*, 371 U.S. 178, 182 (1962).

[6] *Woolsey v. Marion Labs., Inc.*, 934 F.2d 1452, 1462 (10th Cir. 1991).

2

A court may deny a motion to amend as futile if the proposed amendment would not withstand a motion to dismiss or if it otherwise fails to state a claim.[7] Thus, the court must analyze a proposed amendment as if it were before the court on a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6).

A dismissal for failure to state a claim under Rule 12(b)(6) is appropriate only when it appears beyond a doubt that the plaintiff can prove no set of facts in support of the theory of recovery that would entitle it to relief.[8] In evaluating a Rule 12(b)(6) motion to dismiss, "all well-pleaded factual allegations in the . . . complaint are accepted as true and viewed in the light most favorable to the nonmoving party."[9] The issue in reviewing the sufficiency of a plaintiff's complaint is not whether the plaintiff will prevail, but whether the plaintiff is entitled to offer evidence to support the claims alleged.[10] Although a plaintiff need not state each element of its claim precisely, it must plead minimal factual allegations on those material elements that must be proved.[11]

---

[7]*Ketchum v. Cruz*, 961 F.2d 916, 920 (10th Cir. 1992) ; *Schepp v,. Fremont County,* 900 F.2d 1448, 1451 (10th Cir. 1990).

[8]*Conley v. Gibson*, 355 U.S. 41, 45-46 (1957); *Ledbetter v. City of Topeka, Kan.*, 318 F.3d 1183, 1187 (10th Cir. 2003).

[9]*Sutton v. Utah State School for Deaf and Blind*, 173 F.3d 1226, 1236 (10th Cir. 1999).

[10]*Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 511 (2002); *Beedle v. Wilson*, 422 F.3d 1059, 1063 (10th Cir. 2005).

[11]*Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991); *Rubio v. Turner Unified School Dist. No. 202,* 453 F. Supp. 2d 1295, 1298 (D. Kan. 2006). *See also* Fed. R. Civ. P. 8(a) (a claim for relief shall contain "a short and plain statement of the claim showing that the pleader is entitled to relief.").

### III. Analysis

#### A. Proposed Fraud Claims

Plaintiffs assert virtually identical proposed claims for fraud. In their proposed fraud claims, they allege the following:

(1) Cessna has provided a training course for winter operation of the Caravan 208 series aircraft since 1996 and has aggressively marketed the course to pilots;

(2) During that training course, Cessna used a series of charts showing the decline in the aircraft's performance after the pneumatic deicing boots are used more than once;

(3) the National Transportation Safety Board ("NTSB"), FlightSafety International, and Canadian Safety Board adopted the numbers used in Cessna's training charts and materials;

(4) the numbers in the charts were "fictitious" and "fabricated;"

(5) the numbers used in the charts became part of the public realm and were used in inquiries and notices of proposed rulemaking by the NTSB;

(6) Data included in pilot training materials and presented as fact to pilots utilizing specific airspeed for all phases of flight must be accurate, and data knowingly created "out of thin air" is dangerous and life threatening; and

(7) Cessna's creation and promotion of this material to pilots and to the government constituted fraud.

Plaintiffs further allege that Cessna engaged in similar fraudulent conduct relating to the 1984-86 certification of the Cessna 208B relating to flight into known icing conditions. They assert

that "[t]he exercise of Delegated Option Authority (DOA) by Cessna and the testing representations it made to the FAA as a result of this testing were fraudulent misuses of that DOA authority that were used to obtain FAA certification and ultimately resulted in the deaths and injuries of dozens of pilots," including Plaintiffs or their decedents.  Finally, Plaintiffs assert in their proposed amended complaints that as a result of the fraud and misuse of authority, the Cessna 208B aircraft flown by Plaintiffs or their decedents crashed, resulting in either death or serious injuries to Plaintiffs/Plaintiffs' decedents.

### B. Discussion

Cessna argues that allowing Plaintiffs leave to amend to add these fraud claims would be futile because Plaintiffs have failed to allege that Cessna intended to defraud Plaintiffs and that Plaintiffs relied to their detriment on the alleged fraud.  Cessna contends that those allegations are two material elements Plaintiffs must prove in order to prevail on their proposed fraud claims.  Without those required elements, Cessna argues, Plaintiffs' proposed claims cannot withstand a motion to dismiss.

As noted above, a plaintiff's complaint need not allege each element of its claim precisely.[12]  It must, however, plead minimal factual allegations on those material elements that must be proved.[13]  Thus, the Court must first determine whether intent to defraud and reliance on the alleged fraud are material essential elements of a fraud claim.  If they are, the Court must then decide whether Plaintiffs have pled minimal factual allegations on those elements.

---

[12] *Hall*, 935 F.2d at 1110; *Rubio*, 453 F. Supp. 2d at 1298.

[13] *Hall*, 935 F.2d at 1110; *Rubio*, 453 F. Supp. 2d at 1298.

In determining whether intent to defraud and reliance are material elements of the cause of action, this Court must first decide what laws to apply. Because the Judicial Panel on Multidistrict Litigation transferred these cases to the District of Kansas pursuant to 28 U.S.C. § 1407, this Court is obligated to apply the substantive law of the transferor courts and treat each case as if it were pending in the district from which it was transferred.[14] Moreover, given that Plaintiffs' proposed fraud claims would be in federal court on the basis of diversity jurisdiction, the Court must look to the law of the forum state to determine which jurisdiction's law governs each case.[15]

The Ingram case was initially filed in and transferred from the District of Idaho; the Emmons case was filed in and transferred from the Northern District of Illinois; the Morris case was filed in and transferred from the Northern District of Texas; and the Villanueva case was filed in and transferred from the District of Utah. Cessna therefore requests that the Court look to the substantive law of those states. Plaintiffs do not dispute that those states' laws are applicable. Thus, the Court will turn to common law of those states to determine the elements of actionable fraud.

Under Idaho law, the elements of actionable fraud include the defendant's intent that the alleged false representation be acted on by the plaintiff and in the manner reasonably contemplated, the plaintiff's reliance on the truth, and the plaintiff's right to rely thereon.[16] Similarly, under

---

[14]*See In re Norplant Contraceptive Prods. Liab. Litig.,* 215 F. Supp. 2d 795, 804 (E.D. Tex. 2002); *In re Dow Co. Sarabond Prods. Liab. Litig.*, 666 F.Supp. 1466, 1468 (D. Colo. 1987) (citing *In re Plumbing Fixtures Litig.*, 342 F.Supp. 756, 758 (Jud. Pan. Mult. Lit. 1972) (citation omitted)); *see also Van Dusen v. Barrack*, 376 U.S. 612, 643-46 (1964).

[15]*See In re Norplant*, 215 F. Supp. 2d at 804; *Huddy v. Fruehauf Corp.*, 953 F.2d 955, 956 (5th Cir. 1992) (citing *Klaxon v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941)) (citation omitted).

[16]*Aspiazu v. Mortimer*, 139 Idaho 548, 550, 82 P.2d 830, 832 (2003) (citations omitted).

Illinois law, the elements of fraud include the defendant's intent that the alleged false statement induce the plaintiff to act and the plaintiff's reliance on the statement.[17] Likewise, under Texas law, the elements of fraud include a material false misrepresentation that was intended to be acted upon and which was relied upon.[18] Finally, under Utah law, the elements of a fraud claim include the following: (1) a false representation made for the purpose of inducing the other party to act upon it, and (2) the other party relied upon the false representation and was thereby induced to act on it.[19]

As Cessna points out, under *any* of these states' common law, to establish fraud, the plaintiff must prove that the defendant intended to deceive or induce the other party to act upon the misrepresentation and that the other party relied on the misrepresentation. Thus, as discussed above, to withstand a motion to dismiss, Plaintiffs must plead factual allegations relating to these material elements.[20]

Plaintiffs argue that their allegation that "data knowingly created out of 'thin air' is dangerous, life threatening and irresponsible" demonstrates Cessna's intent to deceive. They also argue that their allegation that "[t]he creation and promotion of this material to pilots and to the government constituted fraud" shows the requisite intent.

In addition, Plaintiffs argue that they have pled sufficient factual allegations showing Plaintiffs' or their decedents' reliance on the alleged fraud. They point to the following allegation:

---

[17] *Suburban 1, Inc. v. GHS Mortgage, LLC*, 358 Ill. App. 3d 769, 772, 833 N.E.2d 18, 22 (Ill. App. 2 Dist 2005) (citations omitted).

[18] *Sears, Roebuck & Co. v. Meadows*, 877 SW. 2d 281, 282 (Tex. 1994) (citations omitted).

[19] *Gold Standard, Inc. v. Getty Oil Co.*, 915 P.2d 1060, 1066-67 (Utah 1996).

[20] *See Hall,* 935 F.2d at 1110; *Rubio,* 453 F. Supp. 2d at 1298.

7

"This data fraudulently created and used was in the public realm where it affected pilots and government agencies views of the Cessna Caravan 208 series aircraft performance and accident rate before the accident which is the subject of this action occurred."  Plaintiffs argue in their briefing that this and other significant operating procedures were clearly relied upon by all pilots of the Cessna 208 Series aircraft who received supplements to the Pilots Operating Handbook and who relied upon Cessna's experience and testing.

The Court has carefully reviewed Plaintiffs' proposed amendments, and finds no facts alleged which establish that Defendant had any intent that the "hypothetical numbers" be relied upon by Plaintiffs or their decedents.  Nor are there any facts pled establishing what acts Plaintiffs or their decedents took in reliance on Cessna's allegedly false statements.  Indeed, the proposed amended complaints are devoid of any allegations even showing that Plaintiffs or their decedents had knowledge of the alleged misrepresentations. The only allegations of reliance and intent that the Court finds before it are those made in Plaintiffs' *briefing* in support of their motions to amend.  As they are not allegations made in the proposed amendments themselves, the Court cannot consider them in determining the sufficiency of the proposed amended complaints.

For these reasons, the Court finds that Plaintiffs' proposed fraud claims cannot withstand a motion to dismiss.  Granting Plaintiffs leave to amend their complaints, as proposed, would be futile. The Court therefore denies the motions to amend to the extent they seek leave to plead fraud claims against Cessna.

The Court will now turn to the requests to amend to add punitive damages claims.  The proposed claims for punitive damages are based on the proposed allegations of fraud.  As the Court has ruled that Plaintiffs' proposed fraud claims cannot withstand a motion to dismiss, it follows that

the propose punitive damages claims cannot stand. The Court must therefore also deny the motions to amend to the extent Plaintiffs seek to add claims for punitive damages.

Although the Court is denying the motions to amend, it will do so without prejudice to the Emmons, Ingram, Morris and Villanueva Plaintiffs filing additional motions to amend their complaints if, under Rule 11 standards, they are able to allege the required elements of fraud. Allowing Plaintiffs the opportunity to re-plead their fraud and punitive damages allegations rests on the mandate that leave to amend should be "freely given when justice so requires"[21] and the principle that a party ought to be afforded an opportunity to test its claims on the merits.[22] To the extent these Plaintiffs still wish to amend their complaints to add fraud and punitive damages claims, they may file motions to amend consistent with this opinion on or before **January 5, 2007.**

**IT IS THEREFORE ORDERED** that Plaintiffs' Motions for Leave to File Amended Complaints (doc. 76-79) are denied without prejudice as set forth herein.

**IT IS FURTHER ORDERED** that to the extent these Plaintiffs still wish to amend their complaints to add fraud and punitive damages claims, they may file motions to amend consistent with this opinion on or before **January 5, 2007.**

**IT IS SO ORDERED**.

---

[21] Fed. R. Civ. P. 15(a).

[22] *Foman v. Davis*, 371 U.S. 178, 182 (1962).

Dated in Kansas City, Kansas on this 22nd day of December 2006.

                                               s/ David J. Waxse
                                               David J. Waxse
                                               U.S. Magistrate Judge

cc:    All counsel and *pro se* parties