## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| **IN RE: CESSNA 208 SERIES AIRCRAFT** | ) | |
| **PRODUCTS LIABILITY LITIGATION** | ) | |
| | ) | **MDL No: 1721** |
| **(This Document Relates Only To** | ) | |
| **Silvey, et al. v. Cessna Aircraft Company, et al.,** | ) | **Case No: 05-md-1721-KHV** |
| **D. Kan. No. 06-CV-2261-KHV)** | ) | |
| | ) | |
| | ) | |
| _____ | ) | |

## MEMORANDUM AND ORDER

On November 8, 2002, Wade Silvey, the pilot of a Cessna Model 208B airplane died with three others on board when the plane crashed approximately three miles south of Parks, Arizona. In the District Court of Tarrant County, Texas, Mr. Silvey's family filed suit against Cessna Aircraft Company, Inc. ("Cessna"), Goodrich Corporation, FlightSafety International, Inc. ("FlightSafety") and Brown County Financial Services, L.L.C. Defendants removed the action to federal court and the Judicial Panel on Multidistrict Litigation transferred it to this Court. This matter is before the Court on Defendant FlightSafety's Motion For Summary Judgment And Brief In Support (Doc. #212) filed April 25, 2007. For reasons stated below, the Court sustains defendant's motion in part.

## Legal Standards

Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. See Fed. R. Civ. P. 56(c); accord Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986); Vitkus v. Beatrice Co., 11 F.3d 1535, 1538-39 (10th Cir. 1993). A factual dispute is "material" only if it "might affect the outcome of the suit under the governing law." Anderson, 477 U.S. at 248. A "genuine" factual dispute requires more than a mere scintilla of evidence. Id. at 252.

The moving party bears the initial burden of showing the absence of any genuine issue of material fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986); Hicks v. City of Watonga, 942 F.2d 737, 743 (10th Cir. 1991).  Once the moving party meets its burden, the burden shifts to the nonmoving parties to demonstrate that genuine issues remain for trial as to those dispositive matters for which they carry the burden of proof.  Applied Genetics Int'l, Inc. v. First Affiliated Sec., Inc., 912 F.2d 1238, 1241 (10th Cir. 1990); see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986); Bacchus Indus., Inc. v. Arvin Indus., Inc., 939 F.2d 887, 891 (10th Cir. 1991).  The nonmoving parties may not rest on their pleadings but must set forth specific facts. Applied Genetics, 912 F.2d at 1241.

"[W]e must view the record in a light most favorable to the parties opposing the motion for summary judgment."  Deepwater Invs., Ltd. v. Jackson Hole Ski Corp., 938 F.2d 1105, 1110 (10th Cir. 1991).  Summary judgment may be granted if the nonmoving parties' evidence is merely colorable or is not significantly probative.  Anderson, 477 U.S. at 250-51.  "In a response to a motion for summary judgment, a party cannot rely on ignorance of facts, on speculation, or on suspicion, and may not escape summary judgment in the mere hope that something will turn up at trial."  Conaway v. Smith, 853 F.2d 789, 794 (10th Cir. 1988).  Essentially, the inquiry is "whether the evidence presents a sufficient disagreement to require submission to the jury or whether it is so one-sided that one party must prevail as a matter of law."  Anderson, 477 U.S. at 251-52.

### Factual Background

The following material facts are uncontroverted, deemed admitted or where controverted viewed in the light most favorable to plaintiffs.

On November 8, 2002, Wade Silvey (the pilot), Robert Fry (the co-pilot), James Randolph,

Jr., and Bradford Galaway died in the crash of a Cessna 208B airplane (also known as a "Cessna Caravan"). The flight originated in Las Vegas, Nevada and was scheduled to end in Midland, Texas. Just before the plane left, Silvey contacted the Automated Flight Service Station ("FSS") in Fort Worth, Texas to file an instrument flight plan. As the FSS employee entered the flight plan, Silvey asked about a weather advisory regarding icing. The FSS employee told Silvey of an advisory for moderate mixed and rime icing from the freezing level up to 24,000 feet along his flight path.[1] The freezing level was forecast to be at 12,500 feet over Arizona and at 10,500 feet east of Arizona.

According to the Federal Aviation Administration ("FAA"), the airplane left Las Vegas at about 9:19 a.m. Mountain Standard Time, and after obtaining a clearance, the airplane climbed to a cruising altitude of 13,000 feet. At 10:13 a.m., Silvey contacted the Albuquerque FSS to report that the plane was west of Flagstaff, Arizona at 15,000 feet and that it had encountered light mixed icing. At 10:15 a.m., Silvey contacted Albuquerque Air Traffic Control, reported "getting. . . mixed. . . right . . . now" and requested authority to climb to 17,000 feet. At 10:16 a.m., the air traffic controller cleared the plane to climb to 17,000 feet. During this conversation, the air traffic control radar showed the plane climbing to 15,200 feet and then rapidly descending. The aircraft crashed in a wooded area three miles south of Parks, Arizona.

Silvey and Fry were licensed pilots. Silvey held a commercial pilot certificate with airplane single-engine and multi-engine ratings. He also held a flight instructor certificate for single-engine aircraft. Silvey had about 1,880 hours of total flight time with about 77 hours in the Cessna Caravan. Fry held a private pilot certificate with an airplane single-engine land rating. He had

---

[1]     Rime is a white or milky opaque granular deposit of ice. Rime icing occurs when super-cooled water droplets strike an object at temperatures at or below freezing.

accumulated about 650 hours of total flight time.

Beginning in June of 2002, Silvey and Fry attended FlightSafety's Cessna Caravan Pilot Initial Course at the FlightSafety Cessna Learning Center in Wichita, Kansas. The FAA has certified and approved the FlightSafety Cessna Learning Center, the Cessna Caravan Pilot Initial Course, and the simulators used in the course for pilot training under 14 C.F.R. Part 142 and other regulations. Because Silvey was an instrument rated pilot and Fry was not, the two pilots received slightly different instruction. Even so, both pilots received instruction in FlightSafety's Cessna Caravan flight simulator and instruction on how to handle icing conditions in the Cessna Caravan.

As noted, plaintiffs filed suit against Cessna, Goodrich Corporation, FlightSafety and Brown County Financial Services in the District Court of Tarrant County, Texas. On February 27, 2006, Cessna removed the case to the United States District Court for the Northern District of Texas. On June 19, 2006, the Judicial Panel on Multidistrict Litigation transferred the case to this Court as part of the multidistrict litigation involving the Cessna 208 Series aircraft.

Plaintiffs allege that ice accumulation on the aircraft was a factor in the crash. Plaintiffs allege that (1) FlightSafety negligently failed to properly instruct the pilots of the Cessna Caravan on how to avoid ice accumulation, the unusual dangers of airframe icing associated with the Cessna Caravan and how to control the Cessna Caravan should ice accumulation occur, and FlightSafety failed to exercise reasonable care in performing flight training services; (2) FlightSafety fraudulently failed to disclose information about icing conditions with the Cessna Caravan; and (3) FlightSafety breached express and implied warranties to plaintiffs concerning FlightSafety's training and safety instructions and the aircraft itself. See Silvey Plaintiffs' Second Amended Original Petition at 8-11,

attached as Exhibit #144 to <u>Notice of Removal</u> (Doc. #1) filed February 27, 2006 in <u>Fry v. Cessna</u>

<u>Aircraft Co.</u>, No. 04-cv-00155 (N.D. Tex.).  FlightSafety seeks summary judgment on all claims.

<strong><u>Analysis</u></strong>

**I.      Educational Malpractice**

FlightSafety argues that plaintiffs' negligent instruction claims are claims of educational

malpractice, which Texas courts do not recognize.[2]  <u>See</u> <u>Defendant's Motion</u> (Doc. #212) at 6.

Plaintiffs first note that before defendants removed this case to federal court, the Honorable Donald

J. Cosby of the District Court in Tarrant County, Texas overruled FlightSafety's motion for

summary judgment on the same issue.  <u>See</u> Court's Order Denying Defendant FlightSafety

International's Motion For Summary Judgment filed August 29, 2005, attached as Exhibit B to

<u>Silvey Plaintiffs' Motion To Strike FlightSafety International, Inc.'s Motion For Summary Judgment</u>

<u>And Brief In Support Thereof</u> (Doc. #252, originally filed as Doc. #240).  Several courts have

---

[2]      The parties assume that Texas law applies.  In a multidistrict litigation case, the Court applies the choice-of-law rules of the state where the action was originally filed.  <u>Johnson v. Cont'l Airlines Corp.</u>, 964 F.2d 1059, 1063 (10th Cir. 1992); <u>see</u> <u>Klaxon Co. v. Stentor Elec. Mfg. Co.</u>, 313 U.S. 487, 496-97 (1941); <u>Van Dusen v. Barrack</u>, 376 U.S. 612, 639 (1964).  This case was originally filed in Texas.  Texas courts apply the "most significant relationship" test to decide choice of law issues.  <u>Hughes Wood Prods., Inc. v. Wagner</u>, 18 S.W.3d 202, 205 (Tex. 2000); <u>see also</u> Restatement (Second) of Conflict of Laws §§ 6, 145 (1971).  Under that test, a court must consider which state's law has the most significant relationship "to the particular substantive issue to be resolved." <u>Hughes Wood Prods.</u>, 18 S.W.3d at 205.
         Here, Silvey apparently was a resident of Texas and he worked in Texas as a pilot for Brown County Financial Services, which operated the plane.  Other than the location of the crash, the parties have not identified any significant connection to Arizona.  The parties do not suggest that the location of the flight training in Kansas is of particular importance.  Based on the present record, the Court applies Texas law.  <u>See</u> <u>Total Oilfield Servs., Inc. v. Garcia</u>, 711 S.W.2d 237 (Tex. 1986) (Texas law applied in wrongful death case where Texas resident killed in industrial accident in Oklahoma); <u>Robertson v. McKnight</u>, 609 S.W.2d 534 (Tex. 1980) (New Mexico law applied to case involving New Mexico residents arising from airplane crash in Texas); <u>Gutierrez v. Collins</u>, 583 S.W.2d 312 (Tex. 1979) (Texas law applied to case involving Texas residents arising from automobile accident in Mexico).

rejected educational malpractice claims in analogous circumstances. See Page v. Klein Tools, Inc., 610 N.W.2d 900 (Mich. 2000) (utility pole climbing course); cf. Alsides v. Brown Inst., Ltd., 592 N.W.2d 468 (Minn. Ct. App. 1999) (computer programming course). Even so, Judge Cosby held that such claims are sufficient under Texas law. Judge Cosby issued a summary ruling. See Order filed August 29, 2005 at 1 (ruling made after careful and lengthy review of briefing including case law and authorities cited). Based on the excerpts of the briefing and oral argument in state court, however, it appears that Judge Cosby relied on Doe v. Yale Univ., 748 A.2d 834, 849 (Conn. 2000) (recognizing claim for breach of common law duty not to cause physical injury by negligent conduct during course of instruction), and the dissenting opinion in Page. See Fry, Gallaway And Silvey Plaintiffs' Response To Defendant FlightSafety's Motion For Summary Judgment filed October 14, 2004 at 36 (asking court to follow Doe v. Yale Univ. and dissenting opinion in Page), attached as Exhibit 2 to FlightSafety International Inc.'s Response to Silvey Plaintiffs' Motion To Strike FlightSafety International, Inc.'s Motion For Summary Judgment And Brief In Support Thereof (Doc. #248) filed June 19, 2007; Defendant FlightSafety's Second Amended Motion For Summary Judgment filed September 24, 2004 at 8-11, 17-18 (relying on majority opinion in Page), attached as Exhibit A to Silvey Plaintiffs' Motion To Strike FlightSafety International, Inc.'s Motion For Summary Judgment And Brief In Support Thereof (Doc. #252, originally filed as Doc. #240).

In Page, plaintiff attended a three-week course at defendant's trade school which taught him how to climb wooden utility poles using equipment designed for that purpose. See 610 N.W.2d at 901. Shortly after completing the course, plaintiff fell some 60 feet while he was climbing down a utility pole. See id. Plaintiff filed suit against the trade school, alleging that by offering him a three-week course, defendant assumed a duty to teach him the fundamentals of pole climbing and

that it was negligent in failing to instruct him how to do so safely.  See id. at 902.  The majority held that plaintiff's claim should be characterized as one of educational malpractice, which is not cognizable under Michigan law.  See id. at 905-06.  The majority noted that educational malpractice claims are disfavored on various public policy grounds including: (1) the lack of a satisfactory standard of care by which to evaluate an educator; (2) the inherent uncertainties about causation and the nature of damages in light of such intervening factors as a student's attitude, motivation, temperament, past experience, and home environment; (3) the potential for a flood of litigation against schools; and (4) the possibility that such claims will "embroil the courts into overseeing the day-to-day operations of schools."  Id. at 903 (quoting Alsides, 592 N.W.2d at 472).  The dissent, however, noted that plaintiff asserted a distinct claim of negligence, i.e. that defendant taught improper techniques for how to use a particular piece of equipment for climbing utility poles, which did not fall within the disfavored realm of educational malpractice.  See id. at 909.  The dissent distinguished the case from one involving general educational instruction and inquiry into the nuances of educational theories.  It reasoned that based on the manufacturer's instructions and user experience, the jury had a standard of care to ascertain whether the specific technique which defendant taught was reasonable.  See id. at 909-10.  In addition, the dissent noted that defendant had a duty to exercise reasonable care in the execution of the contract under which defendant was to teach plaintiff how to climb utility poles.  See id. at 911-12.

In Alsides, students of a computer course in a trade school alleged that they received an inadequate education and that the instructors were not competent.  See 592 N.W.2d at 470-71.  The Minnesota Court of Appeals held that plaintiffs' claims which challenge the general quality of instructors and the education they received are barred because "the court would be forced to enter

into an inappropriate review of educational policy and procedures." Id. at 473 (quoting Cavaliere v. Duff's Bus. Inst., 605 A.2d 397, 402 (Pa. Super. 1992)).  Alsides, however, recognized that plaintiffs' claims for breach of contract, fraud or misrepresentation are cognizable to the extent they allege that the institution failed to perform on specific promises and such claims would not involve an inquiry into the nuances of educational processes and theories.  See id.

After Judge Cosby's ruling in this case in August of 2005, two courts rejected similar claims of negligent instruction against FlightSafety.  See Judgment filed June 19, 2007 in Dallas Airmotive v. FlightSafety Int'l, Inc., No. 02-CV-213425-01 (Cir. Ct. Jackson County, Mo.), attached as Exhibit 1 to Supplement To FlightSafety's Reply To Silvey Plaintiffs' Response And Brief In Opposition To Defendant FlightSafety International Inc.'s Motion For Summary Judgment And Brief In Support (Doc. #250) filed June 20, 2007; Sheesley v. Cessna Aircraft Co., Nos. 02-4185-KES, 03-5011-KES, 03-5063-JES, 2006 WL 1084103 (D.S.D. Apr. 20, 2006).  Dallas Airmotive relied in large part on the reasoning of the majority opinion in Page.  In addition, Sheesley specifically rejected Doe v. Yale Univ.  Because the two recent opinions which involve FlightSafety rely in large part on Page and Doe v. Yale Univ., which Judge Crosby already had before him, the Court declines to re-visit this issue under Texas law.  Judge Crosby's ruling was a reasonable application of Texas law and is supported by Doe v. Yale Univ. and the dissenting opinion in Page. The Court therefore overrules FlightSafety's motion for summary judgment on this ground.

## II.     Federal Preemption

FlightSafety argues that the Federal Aviation Act and its implementing regulations preempt plaintiffs' claims which attack FlightSafety's curriculum and flight simulators.  Under Article VI of the United States Constitution, the laws of the United States "shall be the supreme Law of the

Land; . . . any Thing in the Constitution or Laws of any State to the Contrary notwithstanding." U.S. Const. Art. VI, Cl. 2; <u>see</u> <u>Choate v. Champion Home Builders Co.</u>, 222 F.3d 788, 791 (10th Cir. 2000). Because of the supremacy of federal law, state common law or statutory law that conflicts with federal law is without effect. <u>Emerson v. Kan. City S. Ry. Co.</u>, 503 F.3d 1126, 1128-29 (10th Cir. 2007) (citations omitted).

Federal preemption of state law may be either express or implied. <u>Id.</u> at 1129; <u>Choate</u>, 222 F.3d at 792. Express preemption occurs when Congress "define[s] explicitly the extent to which its enactments pre-empt state law." <u>Emerson</u>, 503 F.3d at 1129 (quoting <u>Choate</u>, 222 F.3d at 792). Implied preemption includes both field preemption and conflict preemption. Field preemption occurs when "the scope of a statute indicates that Congress intended federal law to occupy a field exclusively." <u>Sprietsma v. Mercury Marine</u>, 537 U.S. 51, 64 (2002) (internal quotations and citations omitted). On the other hand, conflict preemption arises when it is either "impossible for a private party to comply with both state and federal requirements," or where state law "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." <u>Emerson</u>, 503 F.3d at 1129 (quoting <u>Sprietsma</u>, 537 U.S. at 64) (further quotations and citations omitted).

Conflict preemption depends on an actual conflict and may arise even where Congress has not completely displaced state regulation in a specific area. <u>Fid. Federal Savings & Loan Ass'n v. De la Cuesta</u>, 458 U.S. 141, 152 (1982). Federal regulations have no less preemptive effect than federal statutes. <u>Id.</u> at 153; <u>Kansas ex rel. Todd v. United States</u>, 995 F.2d 1505, 1509 (10th Cir. 1993); <u>Integrity Mgmt. Int'l, Inc. v. Tombs & Sons, Inc.</u>, 836 F.2d 485, 492 (10th Cir. 1987). If a state common law claim directly conflicts with a properly promulgated federal regulation, the state

claim is preempted.  See Sprietsma, 537 U.S at 527; City of New York v. FCC, 486 U.S. 57, 59, 65-70 (1988); Hillsborough County v. Automated Med. Labs., Inc., 471 U.S. 707, 713 (1985).  A federal regulation's preemptive force does not depend on express congressional intent to displace state law.  See City of New York, 486 U.S. at 64; De la Cuesta, 458 U.S. at 154.

The statutorily authorized regulations of an agency will preempt any state or local law that conflicts with such regulations or frustrates the purposes thereof.  City of New York, 486 U.S. at 64.  In other words, "a federal agency acting within the scope of its congressionally delegated authority may pre-empt state regulation" and hence render unenforceable state or local laws that are otherwise not inconsistent with federal law.  Id. at 63-64 (quoting La. Pub. Serv. Comm'n v. FCC, 476 U.S. 355, 369 (1986)).  In cases involving this type of preemption, the inquiry is whether the federal agency has properly exercised its own delegated authority rather than simply whether Congress has properly exercised its legislative power.  Id. at 64; see De la Cuesta, 458 U.S. at 153-54 (where Congress has directed agency to exercise discretion, review limited to whether agency exceeded statutory authority or acted arbitrarily); Capital Cities Cable, Inc. v. Crisp, 467 U.S. 691, 699-700 (1984); Integrity Mgmt., 836 F.2d at 492 (when preemption by regulation at issue, courts consider whether agency intended to preempt state law and if that decision is a reasonable one, whether Congress intended to give agency authority to preempt state law) (citations omitted).

Here, FlightSafety has not shown (1) that plaintiffs' state law tort claims regarding its curriculum and flight simulators stand as an obstacle to the accomplishment and execution of the full objectives of the FAA's regulations or (2) that it is impossible for FlightSafety to comply with both federal and state law pertaining to its curriculum and flight simulators.  See Sprietsma, 537 U.S. at 64.  In particular, FlightSafety offers no evidence that if it had proposed additional instruction or simulations on icing conditions, the FAA would have rejected them.  In addition, FlightSafety offers

no evidence of the FAA's view of the preemptive effect of its regulations, a critical viewpoint for the Court to consider before finding conflict preemption.[3]

In support of its preemption arguments, FlightSafety cites Sheesley v. Cessna Aircraft Co., Nos. 02-4185-KES, 03-5011-KES, 03-5063-JES, 2006 WL 1084103 (D.S.D. April 20, 2006). In Sheesley, plaintiffs alleged that FlightSafety (1) negligently designed its flight training curriculum by failing to provide training on proper emergency procedures for handling an exhaust system failure and (2) negligently used a flight simulator that did not replicate the actual handling of the plane during the loss of power to one engine, such as during an exhaust system failure. Id. at *23. Sheesley held that federal law preempted plaintiffs' claims related to FlightSafety curriculum because the record evidence established that the FAA would not "authorize a training center to teach emergency procedures that are not contained in the Pilot's Operating Handbook." Id. In contrast to Sheesley, FlightSafety offers no evidence that the FAA would not authorize a flight training center to offer further instruction on flying a plane in icing conditions. See Sheesley, 2006 WL 1084103, at *24 (no conflict preemption as to simulator claims because no evidence that FAA would prohibit FlightSafety from seeking approval and using flight simulator which accurately simulated the handling of plane during exhaust system failure). Absent such evidence, even under Sheesley,

---

[3]      On many occasions, the Supreme Court has deferred to a federal agency's opinion on the preemptive effect of its regulations.  See Sprietsma, 537 U.S. at 65-67 (no preemption because Coast Guard did not intend to preclude state regulation); Geier v. Am. Honda Motor Co., Inc., 529 U.S. 861, 881 (2000) (relying in part on opinion of Department of Transportation in amicus brief, as expressed through Solicitor General, that safety would be best promoted if manufacturers installed alternative protection systems in fleets rather than one particular system in every car); Ray v. Atl. Richfield Co., 435 U.S. 151, 178 (1978) (where failure of federal officials to affirmatively exercise full authority takes on character of ruling that no such regulation is appropriate or approved pursuant to policy of statute, states not permitted to use police power to enact such regulation) (quoting Bethlehem Steel Co. v. N.Y. State Labor Relations Bd., 330 U.S. 767, 774 (1947)); cf. Integrity Mgmt., 836 F.2d at 493 (since De la Cuesta in 1982, Supreme Court and Tenth Circuit have not found preemption by federal regulation unless agency made explicit statement on issue).

FAA regulations do not preempt plaintiffs' claims. The Court therefore overrules FlightSafety's motion for summary judgment on this issue.

## III.   Breach Of Implied Warranty Claims

Plaintiffs allege that FlightSafety breached an implied warranty to the pilots during flight training by failing to teach them how to properly operate the plane in icing conditions. An implied warranty that services will be performed in a good and workmanlike manner may arise under the common law when public policy mandates. Melody Home Mfg. Co. v. Barnes, 741 S.W.2d 349, 354 (Tex. 1987); Dennis v. Allison, 698 S.W.2d 94, 95 (Tex. 1985). The Texas Supreme Court has recognized an implied warranty for services only when the services relate to the repair or modification of existing tangible goods or property. Rocky Mountain Helicopters, Inc. v. Lubbock County Hosp. Dist., 987 S.W.2d 50, 52-53 (Tex. 1998); see Archibald v. Act III Arabians, 755 S.W.2d 84, 86 (Tex. 1988) (horse training services fall within scope of implied warranty of good and workmanlike performance because horse training involves modification of existing tangible good, i.e. a horse); Melody Home, 741 S.W.2d at 354 (repairs by manufacturer of home within scope of implied warranty of good and workmanlike performance).

FlightSafety argues that it is entitled to summary judgment because flight training is not a service which relates to the repair or modification of existing tangible goods or property.[4] Plaintiffs argue that FlightSafety flight training services were provided in connection with a tangible good, i.e. FlightSafety training materials which modified the Cessna Pilot Operating Handbook. See Plaintiffs' Response (Doc. #241) at 27. No Texas court, however, has suggested that the implied

---

[4]   FlightSafety also argues that Texas law does not recognize a cause of action for breach of an implied warranty in connection with the performance of professional services. See FlightSafety's Memorandum (Doc. #212) at 26-27. Because the Court finds that flight training services do not relate to the repair or modification of tangible goods, the Court need not address FlightSafety's alternative argument.

warranty of good and workmanlike performance should be expanded in this manner.  As explained above, the warranty applies to services only where they relate to the "repair or modification of existing tangible goods or property."  <u>Rocky Mountain</u>, 987 S.W.2d at 52-53.  Plaintiffs attempt to analogize their claims to the ones in <u>Archibald</u> which held that horse training services involve the modification of horses, an existing tangible good.  <u>See Archibald</u>, 755 S.W.2d at 86.  Flight training materials such as textbooks or guidelines are tangible goods, but providing flight training services does not relate to the "repair or modification" of those goods or of the Cessna Pilot Operating Handbook.  <u>Rocky Mountain</u>, 987 S.W.2d at 52-53; <u>see id.</u> at 53 (Texas law does not recognize implied warranty that services incidental to helicopter maintenance will be performed in good and workmanlike manner).  Plaintiffs have not shown a compelling need to expand implied warranties to cover the repair and modification of textbooks.  <u>See id.</u> (absent demonstrated compelling need, public policy does not justify imposing implied warranty for service transactions); <u>Parkway Co. v. Woodruff</u>, 901 S.W.2d 434, 440 (Tex. 1995) (same).  The Court therefore sustains FlightSafety's motion for summary judgment on plaintiffs' claims for breach of implied warranty.[5]

## IV.    Breach Of Express Warranty Claims

FlightSafety argues that it is entitled to summary judgment on plaintiffs' breach of express warranty claims because they are simply re-packaged educational malpractice claims which federal

---

[5]      Plaintiffs argue that Judge Cosby overruled FlightSafety's earlier motion for summary judgment on the same issue, but the record reflects that Judge Cosby only considered FlightSafety's motion on educational malpractice grounds.  <u>See</u> Fry, Gallaway And Silvey Plaintiffs' Response To Defendant FlightSafety's Motion For Summary Judgment filed October 14, 2004 at 1 (by agreement, only issue in motion for summary judgment is educational malpractice), attached as Exhibit 2 to <u>FlightSafety's Response To Motion To Strike</u> (Doc. #248); Letter to all counsel from FlightSafety counsel dated October 8, 2004 (hearing on motion for summary judgment limited to educational malpractice issue), attached as Exhibit 1 to <u>FlightSafety's Response To Motion To Strike</u> (Doc. #248)

law preempts.[6]  See FlightSafety's Memorandum (Doc. #212) at 28-29.  For reasons set forth above as to these same arguments, the Court overrules FlightSafety's motion as to plaintiffs' express warranty claims.

IT IS THEREFORE ORDERED that Defendant FlightSafety's Motion For Summary Judgment And Brief In Support (Doc. #212) filed April 25, 2007 be and hereby is SUSTAINED in part.  The Court sustains FlightSafety's motion as to plaintiffs' claims for breach of implied warranty.  FlightSafety's motion is otherwise overruled.

Dated this 7th day of March, 2008, at Kansas City, Kansas.

s/ Kathryn H. Vratil
KATHRYN H. VRATIL
United States District Judge

---

[6]     FlightSafety also argues that it did not make either express warranty, but it does not set forth any facts to support its contention in its original memorandum.  The Court therefore does not address the factual support for plaintiffs' express warranty claims.