# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

IN RE: CESSNA 208 SERIES AIRCRAFT )
PRODUCTS LIABILITY LITIGATION )
) MDL No: 1721
(This Document Relates Only To )
<u>Allan, et al. v. Cessna Aircraft Company, et al.</u>, ) Case No: 05-md-1721-KHV
D. Kan. No. 07-2120-KHV) )
)
)
_____)

## MEMORANDUM AND ORDER

On October 6, 2005, Nancy Chase-Allan, the pilot of a Cessna Model 208B airplane, died when the plane crashed near Winnipeg, Manitoba in Canada. Prior to her death, Chase-Allan resided in Moncton, New Brunswick. Her family later filed suit against Cessna Aircraft Company, Inc. ("Cessna") and Goodrich Corporation ("Goodrich") in the United States District Court for the Southern District of New York. The Judicial Panel on Multidistrict Litigation ("MDL Panel") later transferred the action to this Court. This matter is before the Court on <u>Cessna's Motion To Dismiss For *Forum Non Conveniens*</u> (Doc. #269) filed August 6, 2007. For reasons stated below, the Court overrules defendant's motion.

## Factual And Procedural Background

Chase-Allan, a resident of Moncton, New Brunswick, worked as a pilot for Morning Star, a Canadian air cargo company with headquarters in Edmonton, Alberta. As noted, Chase-Allan died in the crash of a Cessna 208B (Caravan) airplane shortly after it took off from the airport in Winnipeg, Manitoba on October 6, 2005.

The Transportation Safety Board of Canada ("Canadian TSB") conducted an official investigation of the accident. The United States National Transportation Safety Board ("NTSB") and the United States Federal Aviation Administration ("FAA") assisted the Canadian TSB with the

investigation. Based on the investigation, the NTSB issued recommendations that during flight in icing conditions, pilots of Cessna Model 208 Series airplanes must disengage the autopilot, fly the plane manually and maintain a minimum operating airspeed of 120 knots. The NTSB also prohibited pilots from flying the 208 Series airplanes into more than light icing conditions. The FAA issued a similar Airworthiness Directive which established a minimum speed for flying 208 Series airplanes in icing conditions, prohibited pilots from continuing to fly after encountering moderate or greater icing conditions, advised pilots of the effects of ice accumulation on the air frame at certain speeds, warned that aural stall warning systems do not function properly in icing conditions, and required placards in all cockpits which reflected the changes. On April 20, 2006, the Canadian Department of Transportation adopted the FAA Airworthiness Directive without modification. On September 20, 2006, the Canadian TSB issued a report which concluded that at the time of the crash on October 6, 2005, the weight of the Cessna Caravan exceeded the maximum take-off weight and the maximum weight for operation in icing conditions.

Cessna is incorporated in Kansas and has its principal place of business in Wichita, Kansas. Cessna designed, tested and built the Caravan airplane in Kansas from components which it and other companies manufacture throughout the world. The Cessna Caravan is equipped with pneumatic de-icing boots which are manufactured by Goodrich, which is incorporated in New York and has its principal place of business in Charlotte, North Carolina. Goodrich manufactures the pneumatic de-icing boots in Union, West Virginia. The FAA certified the Cessna Caravan. In 1984, based solely on the FAA certification, Canadian authorities also certified the model.

Plaintiffs allege that ice accumulation on the aircraft was a factor in the crash which killed Chase-Allan. Plaintiffs allege that (1) the Caravan left Cessna's control in an unreasonably

dangerous condition; (2) Cessna negligently designed, manufactured and assembled the Caravan; (3) Cessna breached express and implied warranties; and (4) Cessna fraudulently disclosed data about the aircraft's certification.  Plaintiffs also assert claims for strict liability, negligence and breach of warranty against Goodrich related to the pneumatic de-icing boots.

As noted, plaintiffs filed suit against Cessna and Goodrich in the United States District Court for the Southern District of New York.  On February 7, 2007, the MDL Panel transferred the case to this Court as part of the multidistrict litigation involving the Cessna 208 Series aircraft.  See Transfer Order (Doc. #67).  The MDL Panel found that the case involved common questions of fact with the other cases pending in the MDL proceeding and that transfer would serve the convenience of the parties and witnesses and promote the just and efficient conduct of the litigation.  See id. at 1.  In particular, the MDL Panel noted that the case shared "factual questions concerning the testing, design and manufacture of the same model of a Cessna aircraft and the aircraft's deicing system."  Id.

## **Analysis**

Cessna argues that under the doctrine of *forum non conveniens*, the Court should dismiss this action in favor of a Canadian forum.  A federal court has discretion to dismiss a case on the ground of *forum non conveniens* when an alternative forum has jurisdiction to hear the case, and trial in the chosen forum would establish "oppressiveness and vexation to a defendant . . . out of all proportion to plaintiff's convenience, or . . . the chosen forum [is] inappropriate because of considerations affecting the court's own administrative and legal problems."  Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp., 127 S. Ct. 1184, 1190 (2007) (quoting Am. Dredging Co. v. Miller, 510 U.S. 443, 447-448 (1994)) (further citations omitted).

In federal courts, the common-law doctrine of *forum non conveniens* only applies in cases where the alternative forum is abroad. See Sinochem, 127 S. Ct. at 1190; Am. Dredging, 510 U.S. at 449 n.2. A defendant invoking *forum non conveniens* ordinarily bears a heavy burden in opposing plaintiffs' chosen forum. See Sinochem, 127 S. Ct. at 1190. When plaintiffs' choice is not their home forum, however, the presumption in plaintiffs' favor "applies with less force," for the assumption that the chosen forum is appropriate in such cases is "less reasonable." Id. (quoting Piper Aircraft Co. v. Reyno, 454 U.S. 235, 255-56 (1981)); see Yavuz v. 61 MM, Ltd., 465 F.3d 418, 426 (10th Cir. 2006); see also In re Air Crash Disaster Near New Orleans, La. on July 9, 1982, 821 F.2d 1147, 1164 n.26 (5th Cir. 1987) (foreign plaintiff's choice of forum entitled to less deference). Even though defendant's burden is somewhat relaxed in the case of foreign plaintiffs, a defendant who is a forum resident, like Cessna, must make a stronger case than others for dismissal based on *forum non conveniens*. See Gschwind v. Cessna Aircraft Co., 161 F.3d 602, 609 (10th Cir. 1998), cert. denied, 526 U.S. 1112 (1999).

The Court examines two threshold questions: (1) whether defendant is amenable to process in an adequate alternative forum and (2) whether foreign law applies. See Gschwind, 161 F.3d at 605. If the answer to either question is no, the doctrine of *forum non conveniens* does not apply. Id. at 605-06. On the other hand, if the answer to both questions is yes, the Court goes on to weigh the private and public interests bearing on the *forum non conveniens* decision. Id. at 606. Here, the parties do not dispute that Cessna is amenable to process in an adequate alternative forum in Canada and that Canadian law applies.

In considering whether to dismiss a case for *forum non conveniens*, the Court considers a range of factors, "most notably the convenience to the parties and the practical difficulties that can

attend the adjudication of a dispute in a certain locality." Quackenbush v. Allstate Ins. Co., 517 U.S. 706, 723 (1996) (citations omitted). The private interest factors include (1) the relative ease of access to sources of proof; (2) the availability of compulsory process for compelling attendance of witnesses; (3) the cost of obtaining attendance of willing non-party witnesses; (4) the possibility of a view of the premises, if appropriate; and (5) all other practical problems that make trial of the case easy, expeditious and inexpensive. Gschwind, 161 F.3d at 606; see Gulf Oil Corp. v. Gilbert, 330 U.S. 501, 508 (1947). The public interest factors include (1) administrative difficulties of courts with congested dockets which can be caused by cases not being filed at their place of origin; (2) the burden of jury duty on members of a community with no connection to the litigation; (3) the local interest in having localized controversies decided at home; and (4) the appropriateness of having diversity cases tried in a forum that is familiar with the governing law. Gschwind, 161 F.3d at 606; see Gilbert, 330 U.S. at 508-09.

**I.      Private Interest Factors**

The first private interest factor, i.e. the relative ease of access to sources of proof, favors plaintiffs.[1] Cessna designed, tested, manufactured and sold the airplane in Kansas. Most of the evidence on liability issues is located in Kansas. Indeed, the MDL Panel found that this case along with others should be consolidated for pretrial proceedings in the District of Kansas because Kansas "is likely to be the location of significant discovery." Transfer Order (Doc. #1) filed December 12, 2005 at 1. Some evidence is certainly located in Canada, but not in a central location. Evidence of plaintiffs' damages appears to be in Moncton, New Brunswick. Relevant evidence also will be

---

[1] The Court notes that the balance of factors, particularly the cost and inconvenience to the parties and witnesses, is somewhat difficult to determine because the alternative forum may be in Manitoba, New Brunswick or elsewhere in Canada. See Cessna's Reply (Doc. #296) at 8.

- 5 -

found in Edmonton, Alberta (airplane maintenance records and logs at Morning Star headquarters) and Winnipeg, Manitoba (evidence of pre-flight inspection and accident scene). By air, Edmonton is some 1300 miles from Winnipeg and 2200 miles from Moncton. On balance, most of the relevant evidence is more easily accessible in the United States and in particular, as part of this MDL proceeding. See In re Bridgestone/Firestone, Inc., Tires Prods. Liability Litig., 190 F. Supp.2d 1125, 1150 (S.D. Ind. Mar. 25, 2002) (some maintenance documents and witnesses in Columbia, but bulk of evidence more accessible in United States). Accordingly, this factor weighs strongly in favor of plaintiffs.

As to the availability of compulsory process for unwilling witnesses, Cessna argues that obtaining information from Canadian authorities and witnesses will be easier if the case is pending in a Canadian court. See Cessna's Memorandum In Support Of Its Motion To Dismiss For *Forum Non Conveniens* (Doc. #270) filed August 6, 2007 at 11. The Court agrees that this factor appears to slightly favor Cessna, but the record does not reflect that a significant number of witnesses will be unwilling to cooperate or that cost to obtain compliance will be substantial.

As to the cost of obtaining evidence from willing witnesses, Cessna has not shown that such costs would be less if the case were tried somewhere in Canada. Indeed, assuming that plaintiffs re-file the case in New Brunswick (where they reside), the cost of obtaining evidence from willing witnesses may actually be greater than if the action were tried in the Southern District of New York. Accordingly, this factor is neutral.

Cessna argues that the possibility of viewing the accident scene is a factor in its favor, but it has not suggested why a jury would want to view the accident scene. More importantly, assuming that plaintiffs would re-file this action in New Brunswick, the accident scene would be 1500 to 2300

miles from the judicial proceedings. Judicial proceedings in the Southern District of New York would be closer to the accident scene than judicial proceedings in New Brunswick. This factor is neutral.[2]

On balance, the private interest factors do not favor a Canadian forum. The Court therefore evaluates the applicable public interest factors.

**II.     Public Interest Factors**

Cessna suggests that two public interest factors favor dismissal: (1) Canada has a greater local interest than the United States and (2) Canadian law likely applies to plaintiffs' claims. As to the first factor, Canada certainly has an interest in this case because Chase-Allan was a resident of Canada. Even so, the pertinent question is whether the United States has such a *de minimis* interest in the controversy that a foreign forum is strongly favored. See In re Bridgestone/Firestone, Inc., 190 F. Supp.2d at 1148 (Colombia has safety interest but cannot ignore United States interest as evidenced by Congressional testimony); Carlenstople v. Merck & Co., Inc., 638 F. Supp. 901, 909 (S.D.N.Y. 1986) (relevant issue whether plaintiff's chosen forum is inappropriate or unfair; interest of foreign forum by itself does not suggest that United States forum is inappropriate), app. dism., 819 F.2d 33 (2d. Cir. 1987). Several courts have recognized that the United States has a significant interest in regulating the conduct of resident aircraft manufacturers even where a particular aircraft accident occurs in a foreign country. See In re Air Crash Disaster at Manheim, Germany on September 11, 1982, 769 F.2d 115 (3d Cir. 1995) (Pennsylvania has greatest interest in liability of in-state aircraft manufacturer even though accident occurred in foreign country); Carlenstople v.

---

[2]     Cessna has not identified other practical problems of having a trial in the Southern District of New York which would favor a Canadian forum.

Merck & Co., Inc., 819 F.2d 33, 48 (2d Cir. 1987) (public interest in having United States court decide issues concerning tortious conduct in this country); Lacey v. Cessna Aircraft Co., 862 F.2d 38 (3d Cir. 1988) (United States has interest in regulating conduct of resident aircraft manufacturer); In re Air Crash Disaster Near Palembang, Indonesia on December 19, 1997, No. MDL 1726, 2000 WL 33593202, at *3 (W.D. Wash. 2000) (Indonesia and Singapore may have stronger relationship to case, but 737 aircraft is popular plane used in United States); Ming v. Cordis Corp., 704 F. Supp. 217, 219 (S.D. Fla. 1989) (plaintiff's choice of forum as site of product manufacture, development and testing has significant interest in outcome); see also Peregrine Myanmar, Ltd. v. Segal, 89 F.3d 41, 47 (2d Cir. 1996) (although Hong Kong has local interest in protecting its corporations from wrongdoing, New York has countervailing strong interest because alleged wrongdoer lived there and critical events took place there).  On balance, this factor weighs in favor of plaintiffs because the United States has a significant interest in the controversy.

Plaintiffs do not dispute that Canadian law likely applies in this case, but Cessna has not pointed to any particular difficulty for a federal court in the United States to apply Canadian law. See In re Bridgestone/Firestone, Inc., 190 F. Supp.2d at 1148 (federal courts capable of applying foreign law when required to do so) (citing Lehman v. Humphrey Cayman, Ltd., 713 F.2d 339, 345 (8th Cir. 1983), cert. denied, 464 U.S. 1042 (1984)).  This factor therefore only slightly favors Cessna.

### III.    Balancing Of Factors

As a forum resident, Cessna must make a stronger case for dismissal based on *forum non conveniens*.  See Gschwind, 161 F.3d at 609.  Even though plaintiffs are Canadian citizens, see id. at 606 (when plaintiffs are foreign, factors need not so heavily favor alternate forum), Cessna has

not satisfied its burden to show that the private and public interest factors favor a Canadian forum. Several factors slightly favor the Canadian forum, but those factors are outweighed by the ease of access to sources of proof as part of this consolidated proceeding and the interest of the United States in regulating the conduct of a resident aircraft manufacturer. The Court therefore overrules Cessna's motion to dismiss for *forum non conveniens*.

**IT IS THEREFORE ORDERED** that Cessna's Motion To Dismiss For Forum Non Conveniens (Doc. #269) filed August 6, 2007 be and hereby is **OVERRULED.**

Dated this 23rd day of April, 2008 at Kansas City, Kansas.

s/ Kathryn H. Vratil
KATHRYN H. VRATIL
United States District Judge