**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**

| | |
|---|---|
| IN RE: CESSNA 208 SERIES AIRCRAFT ) <br> PRODUCTS LIABILITY LITIGATION ) <br> ) <br> ) <br> (This Document Relates Only To <u>Mountain</u> ) <br> <u>Bird, Inc. et al. v. Cessna Aircraft Co. et al.,</u> ) <br> <u>D. Kan. No. 06-cv-2365-KHV</u>) ) <br> _____) | MDL No: 1721 <br><br> Case No: 05-md-1721-KHV |

**MEMORANDUM AND ORDER**

On December 6, 2004, the pilot and one passenger on a Cessna Model 208B airplane died when the plane crashed near Bellevue, Idaho. In the United States District Court for the District of Idaho, Spirit Air, Inc., the owner of the plane, and Mountain Bird, Inc., the operator of the plane, filed suit against Cessna Aircraft Company, Inc. and Goodrich Corporation. Later, the Judicial Panel on Multidistrict Litigation transferred the case to this Court as part of the multidistrict proceedings involving the Cessna 208 series aircraft. This matter is before the Court on <u>Cessna Aircraft Company's Motion For Summary Judgment Against Plaintiffs Spirit Air, Inc. And Mountain Bird, Inc.</u> (Doc. #548) and <u>Defendant Goodrich Corporation's Motion For Judgment On The Pleadings</u> (Doc. #547), both filed August 15, 2008. For reasons stated below, both motions are sustained.[1]

---

[1] Plaintiffs, Cessna and Goodrich request oral argument on the motions. See <u>Plaintiffs Mountain Bird, Inc. And Spirit Air's Request For Oral Argument On Defendant Goodrich Corporation's Motion For Judgment On The Pleadings And Defendant Cessna Aircraft Company's Motion For Summary Judgment</u> (Doc. #588) filed September 30, 2008; <u>Cessna Aircraft Company's Request For Oral Argument On Its Motion For Summary Judgment Against Plaintiffs Spirit Air, Inc. And Mountain Bird, Inc.</u> (Doc. #550) filed August 15, 2008; <u>Request For Oral Argument On Defendant Goodrich Corporation's Motion For Judgment On The Pleadings</u> (Doc. #551) filed August 15, 2008. The Court finds that oral argument will not materially assist in the disposition of the motions. Accordingly, the parties' motions for oral argument are overruled.

**Legal Standards**

In response to Goodrich's motion for judgment on the pleadings, plaintiffs have presented evidence outside the pleadings and ask the Court to construe Goodrich's motion as one for summary judgment. Goodrich does not object so the Court applies the standards for summary judgment motions.

Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. See Fed. R. Civ. P. 56(c); accord Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986); Vitkus v. Beatrice Co., 11 F.3d 1535, 1538-39 (10th Cir. 1993). A factual dispute is "material" only if it "might affect the outcome of the suit under the governing law." Anderson, 477 U.S. at 248. A "genuine" factual dispute requires more than a mere scintilla of evidence. Id. at 252.

The moving party bears the initial burden of showing the absence of any genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986); Hicks v. City of Watonga, 942 F.2d 737, 743 (10th Cir. 1991). Once the moving party meets its burden, the burden shifts to the nonmoving parties to demonstrate that genuine issues remain for trial as to those dispositive matters for which they carry the burden of proof. Applied Genetics Int'l, Inc. v. First Affiliated Sec., Inc., 912 F.2d 1238, 1241 (10th Cir. 1990); see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986); Bacchus Indus., Inc. v. Arvin Indus., Inc., 939 F.2d 887, 891 (10th Cir. 1991). The nonmoving parties may not rest on their pleadings but must set forth specific facts. Applied Genetics, 912 F.2d at 1241.

"[W]e must view the record in a light most favorable to the parties opposing the motion for

summary judgment." Deepwater Invs., Ltd. v. Jackson Hole Ski Corp., 938 F.2d 1105, 1110 (10th Cir. 1991). Summary judgment may be granted if the nonmoving parties' evidence is merely colorable or is not significantly probative. Anderson, 477 U.S. at 250-51. In a response to a motion for summary judgment, a party cannot rely on ignorance of facts, on speculation, or on suspicion, and may not escape summary judgment in the mere hope that something will turn up at trial. Conaway v. Smith, 853 F.2d 789, 794 (10th Cir. 1988). Essentially, the inquiry is "whether the evidence presents a sufficient disagreement to require submission to the jury or whether it is so one-sided that one party must prevail as a matter of law." Anderson, 477 U.S. at 251-52.

**Factual Background**

The following material facts are uncontroverted, deemed admitted or where controverted viewed in the light most favorable to plaintiffs.

On December 5, 2000, Spirit Air, an Idaho corporation, purchased a Cessna Model 208B airplane directly from Cessna. Under the purchase agreement, Spirit Air paid $46,515.00 for the de-icing system option which was installed on the plane. Shortly after it purchased the plane, Spirit Air added additional de-icing equipment.

Spirit Air leased the plane to Mountain Bird doing business as Salmon Air.[2] On December 6, 2004, the plane crashed near Bellevue, Idaho. The plane was destroyed and the pilot and one passenger died in the crash. The flight had originated in Salt Lake City, Utah with a destination of Salmon, Idaho with planned stops at Hailey, Idaho and Challis, Idaho.

As noted, Spirit Air and Mountain Bird filed suit against Cessna and Goodrich in the United

---

[2] Mountain Bird does not allege that it had any involvement with the purchase of the plane. In any event, for purposes of defendants' motions, the Court assumes that Spirit Air and Mountain Bird collectively purchased the plane.

States District Court for the District of Idaho. On September 6, 2006, the Judicial Panel on Multidistrict Litigation transferred the case to this Court as part of the multidistrict litigation involving the Cessna 208 Series aircraft.

Plaintiffs allege that ice accumulation on the aircraft was a factor in the crash. Plaintiffs allege that Cessna and Goodrich negligently designed and/or manufactured the de-icing system on the aircraft. Under theories of strict liability and negligence against both defendants, plaintiffs seek damages in the amount of $1,400,000.00, the value of the aircraft, costs, disbursements and attorneys' fees. See Plaintiffs' First Amended Complaint ¶¶ 16, 25, Attachment 2 to Conditional Transfer Order (Doc. #1 filed in D. Kan. Case No. 06-2365). Based on the Idaho economic loss rule, defendants seek summary judgment on all claims.

## Analysis

### I.  Choice Of Law

The parties assume that Idaho law applies. In a multidistrict litigation case, the Court applies the choice-of-law rules of the state where the action was originally filed. Johnson v. Cont'l Airlines Corp., 964 F.2d 1059, 1063 (10th Cir. 1992); see Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487, 496-97 (1941); Van Dusen v. Barrack, 376 U.S. 612, 639 (1964). This case was originally filed in Idaho. Idaho courts apply the "most significant relationship" test to decide choice of law issues. Johnson v. Pischke, 700 P.2d 19, 21-22 (Idaho 1985); see also Restatement (Second) of Conflict of Laws §§ 6, 145 (1971). Under that test, a court must consider which state's law has the most significant relationship to the "particular issue" to be resolved. Johnson v. Pischke, 700 P.2d at 22 (citing Restatement § 145).

Here, plaintiffs are Idaho corporations with their principal places of business in Idaho. The

plane crashed in Idaho. Cessna is a Kansas corporation with its principal place of business in Kansas. Goodrich is a New York corporation with its principal place of business in North Carolina. In this multidistrict litigation, Magistrate Judge David J. Waxse held that Idaho law applied to the claims of the estate of the pilot who was killed in the crash. See In re Cessna 208 Series Aircraft Prods. Liability Litig., No. 05-md-1721, 2007 WL 2172764, at *7 (D. Kan. July 25, 2007) (under Utah's most significant relationship test, Idaho law applies to claims on behalf of pilot's estate). Judge Waxse noted as follows:

> Villanueva is an action for damages arising from the personal injuries and wrongful death suffered by Fred Villanueva while aboard a Cessna Model 208B aircraft that crashed into the ground near Bellevue, Idaho on December 6, 2004. Thus, the injuries and accident occurred in Idaho. The decedent and the representative of his estate both were citizens of the state of Utah at the time of the accident. Defendant Cessna is a Kansas corporation with its principal place of business in Kansas. Defendant Goodrich is a New York corporation with its principal place of business in North Carolina. Cessna admits that it does business in all 50 states, but specifically denies that it sells aircraft within the state of Utah.
>
> Because the aircraft crash occurred in the state of Idaho, the Court finds that Idaho has the most significant relationship and, thus, Idaho law applies to Villanueva's state law tort claims.

Id. (footnote omitted). Based on this reasoning and absent any suggestion that the result of defendants' motions would be different under the law of one of the other relevant states, the Court applies Idaho law.

**II.   Economic Loss Doctrine**

Defendants argue that plaintiffs' claims are barred because plaintiffs seek relief only for damage to the airplane itself. Plaintiffs argue that the economic loss rule does not apply because their losses are not purely economic, the losses resulted from an accident and they suffered a total

loss of the purchased product. Plaintiffs also invoke at least one of three exceptions to the economic loss rule.

Idaho courts have adopted the economic loss rule, which prohibits the buyer of a defective product from recovering purely economic losses in a negligence action. Blahd v. Richard B. Smith, Inc., 108 P.3d 996, 1000 (Idaho 2005); Duffin v. Idaho Crop Improvement Ass'n, 895 P.2d 1195, 1200 (Idaho 1995); Clark v. Int'l Harvester Co., 581 P.2d 784, 790-91 (Idaho 1978); see also Ramerth v. Hart, 983 P.2d 848, 851 (Idaho 1999) (rule applies to negligence cases in general; rule not restricted to products liability cases). Economic loss includes costs of repair and replacement of defective property which is the subject of the transaction, as well as commercial loss for inadequate value and consequent loss of profits or use. Blahd, 108 P.3d at 1000 (quoting Salmon Rivers Sportsman Camps, Inc., v. Cessna Aircraft Co., 544 P.2d 306, 309 (Idaho 1975)). On the other hand, "[p]roperty damage encompasses damage to property other than that which is the subject of the transaction." Id. (quoting Salmon Rivers, 544 P.2d at 309).

Plaintiffs argue that the economic loss rule does not apply because their loss is not "purely economic." Plaintiffs' Consolidated Response (Doc. #580) at 4, 8-10. As explained above, economic loss includes "costs of repair and replacement of defective property which is the subject of the transaction." Blahd, 108 P.3d at 1000. Here, plaintiffs only seek damages for the value of the subject of the transaction with defendants, i.e. the airplane. See Plaintiffs' First Amended Complaint ¶¶ 16, 25. Accordingly, they seek purely economic loss.

Plaintiffs next argue that the economic loss rule does not apply because the airplane was damaged in an "accident." See Plaintiffs' Consolidated Response (Doc. #580) at 5-6. The Utah Supreme Court has not addressed the accident exception to the economic loss rule, but the United

States Supreme Court has rejected an attempt to distinguish cases based on the manner in which the product is damaged. E. River S.S. Corp. v. Transamerica Delaval Inc., 476 U.S. 858, 872 (1986). Even when the harm to the product itself occurs through an abrupt, accident-like event, the resulting loss due to repair costs, decreased value and lost profits is essentially the failure of the purchaser to receive the benefit of its bargain – traditionally the core concern of contract law. Id. at 870. A federal court in Idaho also has predicted that Idaho courts would refuse to recognize a "sudden and calamitous event" exception to the economic loss rule. See Memorandum And Order filed March 3, 1999 in J.R. Simplot Co. v. Harnischfeger Corp., D. Idaho No. 97-0490-E-BLW, at 8, attached to Reply In Support Of Cessna Aircraft Company's Motion For Summary Judgment Against Plaintiffs Spirit Air, Inc. And Mountain Bird, Inc. (Doc. #602) filed October 15, 2008. This Court likewise predicts that the Idaho Supreme Court would decline to create an accident exception to the economic loss rule.

Finally, plaintiffs argue that the economic loss rule does not apply because the airplane was a "total loss." Plaintiff cites no authority for a total loss exception to the economic loss rule and the Court declines to create one under Idaho law. See C&S Hamilton Hay v. CNH Am., No. 07-31-E-EJL, 2008 WL 504031, at *2 n.2 (D. Idaho Feb. 26, 2008) (irrelevant whether tractor completely destroyed or partially damaged as tractor is still subject of litigation); see also Mtn. W. Helicopters v. Textron, Inc., 13 Fed. Appx. 855, 856 (10th Cir. July 11, 2001) (under Idaho law, helicopter owner could not recover under negligence theory against manufacturer for value of helicopter which was destroyed in accident).

Idaho courts recognize the following exceptions to the economic loss rule: (1) where a loss is parasitic to an injury to person or property; (2) where "unique circumstances" require a different

allocation of risk and (3) where the parties have a "special relationship." Duffin, 895 P.2d at 1200-01.  Plaintiffs argue that their claim is actionable under all three of these exceptions.

      A.      Loss Parasitic To Injury To Person Or Other Property

"Economic loss is recoverable in tort as a loss parasitic to an injury to person or property." Duffin, 895 P.2d at 1200; Just's Inc. v. Arrington Constr. Co., 583 P.2d 997, 1003 (Idaho 1978). Plaintiffs argue that their economic losses are "parasitic" to the deaths of two people who died in the crash. "'Parasitic' implies a 'symbiotic relationship' and this implies that damages for economic harm must be dependent upon the physical harm to be recoverable." In re One Meridan Plaza Fire Litig., 820 F. Supp. 1460, 1486 (E.D. Pa.), rev'd on other grounds, Fed. Ins. Co. v. Richard I. Rubin & Co., Inc., 12 F.3d 1270 (3d Cir. 1993), cert. denied, 511 U.S. 1107 (1994); see also Norfolk & W. Ry. Co. v. Ayers, 538 U.S. 135, 148 (2003) ("parasitic" generally defined as "associated with").

The Idaho Supreme Court has not precisely defined the term "parasitic" for purposes of this exception to the economic loss rule.  In Just's, however, it noted two cases where economic losses were "parasitic" to personal injury or other property damage.  See Just's, 583 P.2d at 1003 (citing Rindlisbaker v. Wilson, 519 P.2d 421 (Idaho 1974) (loss of profits resulting from personal injury) and Shields v. Morton Chem. Co., 518 P.2d 857 (Idaho 1974) (loss of profits resulting from damaged seed beans)).  In both examples, the economic loss was directly related to the physical injury. In addition, the Tenth Circuit, applying Idaho law, affirmed a district court ruling which held that a helicopter owner's economic losses were not parasitic to personal injuries which its employee suffered in the crash.  See Mtn. W. Helicopters, 13 Fed. Appx. at 856, affirming Order filed in D. Utah Case No. 97-CV-887K, attached as Exhibit A to Defendant Goodrich Corporation's Motion For Judgment On The Pleadings (Doc. #547).

Several courts have held that injury to the person or property of a third party is insufficient to create tort liability for economic losses. See, e.g., Turbomeca, S.A. v. French Aircraft Agency, Inc., 913 So.2d 714, 716 (Fla. Dist. Ct. App. 2005) (economic loss rule applies in claim by helicopter owner against manufacturer where despite injuries to pilot and passengers, helicopter owner itself suffered no physical injuries); Aikens v. Baltimore & Ohio R.R. Co., 501 A.2d 277, 278-79 (Pa. Super. 1985) (no recovery for indirect economic losses incurred by employees who lost wages due to defendant's alleged negligence in causing train derailment which damaged plaintiffs' employer's plant); Dundee Cement Co. v. Chem. Labs., Inc., 712 F.2d 1166, 1168 (7th Cir. 1983) (no recovery for lost profits from owner of truck which overturned and blocked only entrance to plaintiff's plant). The Court agrees substantially with the reasoning of the Seventh Circuit as follows:

> The type of plaintiff generally precluded from recovering is the third party who suffers no physical damage to person or property, but who claims harm as a result of injury to the person or property of another. Here, Dundee suffered no physical injury, but claims that the harm to the state's property (the road) caused it economic loss. * * *
>
> "Requiring a defendant who has tortiously injured one person to pay for resulting losses experienced by every other person would place an entirely unreasonable burden on all human activity." Id. at 572, 47 Ill.Dec. at 35, 414 N.E.2d at 1151 (footnote omitted). Accord, Curtis v. County of Cook, 109 Ill.App.3d 400, 409, 65 Ill.Dec. 87, 93, 440 N.E.2d 942, 948 (1982) (following Koskela [v. Martin, 414 N.E.2d 1148 (Ill Ct. App. 1980)]).
>
> Similarly, the Illinois Supreme Court in Woodill v. Parke Davis & Co., 79 Ill.2d 26, 38, 37 Ill.Dec. 304, 310, 402 N.E.2d 194, 200 (1980), specifically adopted the appellate court's conclusion in the case that parents could not recover in strict products liability for the emotional distress and mental anguish they suffered when their child was injured by a defective product. The appellate court had said that the plaintiffs could recover only if they had suffered physical harm. 58 Ill.App.3d 349, 355, 15 Ill.Dec. 900, 905, 374 N.E.2d 683, 688 (1978). * * *

> Most courts and commentators have opposed allowing recovery of purely economic losses because of the fear that there will be crushing, virtually open-ended liability imposed on defendants if economic claims are recognized. "[O]nly a limited amount of physical damage can ever ensue from a single act, while the number of economic interests a tortfeasor may destroy in a brief moment of carelessness is practically limitless." Comment, Foreseeability of Third-Party Economic Injuries-A Problem in Analysis, 20 U.Chi.L.Rev. 283, 298 (1953). As Chief Judge (later Justice) Cardozo succinctly put it, liability would be "in an indeterminate amount for an indeterminate time to an indeterminate class." Ultramares Corp. v. Touche, 255 N.Y. 170, 179, 174 N.E. 441, 444 (1931) (holding that a public accountant was not liable to creditors and investors who relied upon a negligently prepared balance sheet reflecting the assets of a company).

Dundee, 712 F.2d at 1168-69, 1171 (7th Cir. 1983).

Based on the above authorities, the Court predicts that the Idaho Supreme Court would require some nexus between the economic loss and any physical harm. Here, the fact that plaintiffs' economic loss occurred in a plane accident where others died is insufficient to show that their economic loss is "parasitic" to an injury to person or property. See Mtn. W. Helicopters, 13 Fed. Appx. at 856, affirming Order at 4 filed in D. Utah Case No. 97-CV-887K, attached as Exhibit A to Defendant Goodrich Corporation's Motion For Judgment On The Pleadings (Doc. #547); see also Turbomeca, 913 So.2d at 716 (economic loss rule applies in claim by helicopter owner against manufacturer where despite injuries to pilot and passengers, helicopter owner itself suffered no physical injuries); In re One Meridan Plaza Fire Litig., 820 F. Supp. at 1486 (rule which requires some nexus between physical harm and economic loss is wiser, more equitable rule than merely using physical harm as automatic trigger for recovery of economic loss). Plaintiffs have not demonstrated a genuine issue of material fact with regard to the "parasitic loss" exception to the economic loss doctrine.

B.      Unique Circumstances Exception

The Idaho Supreme Court has recognized an exception to the economic loss rule for "unique circumstances" which require a different allocation of risk, but it has never applied the exception. Blahd, 108 P.3d at 1002; Duffin, 895 P.2d at 1002; Just's, 583 P.2d at 1005. Blahd recognized that product purchases are everyday occurrences and do not create unique circumstances which would justify a re-allocation of risk. See Blahd, 108 P.3d at 1002 (purchase of residential house is everyday occurrence, not "unique circumstance"); see also Duffin, 895 P.2d at 1200-01 (certification of seed potatoes not "unique circumstance" which requires re-allocation of risk); Nelson v. Anderson Lumber Co., 99 P.3d 1092, 1101 (Idaho Ct. App. 2004) (inadequate compensation alone insufficient to re-allocate risk); Millenkamp v. Davisco Foods Int'l, Inc., 391 F. Supp.2d 872, 879 (D. Idaho 2005) (sale and purchase of particular product not "unique circumstances").

Here, plaintiffs have not shown "unique circumstances" which require a different allocation of risk. Purchases of planes are commonplace. Plane accidents unfortunately are not so unusual that they are considered "unique." Plaintiffs could have negotiated a different allocation of risk in their contract to purchase the plane from Cessna, but they declined to do so. Also, plaintiffs have not shown unique circumstances which suggest that Goodrich should be held liable as a supplier of a defective component. In these circumstances, plaintiffs have not demonstrated a genuine issue of material fact regarding the unique circumstances exception to the economic loss rule.

C.      Special Relationship Exception

The "special relationship" exception applies to those situations where the relationship between the parties is such that it would be equitable to impose such a duty. Duffin, 895 P.2d at 1201. Plaintiffs assert that they had a special relationship with Cessna because it was the expert on

-11-

the de-icing systems which were installed on the plane and it certified that the plane complied with the pertinent FAA regulations.

In <u>McAlvain v. Gen. Ins. Co. of Am.</u>, 554 P.2d 955 (Idaho 1976), the Idaho Supreme Court held that the relationship between an insurance agent and his insured is such that the agent should be liable for economic damages when he performs his function negligently to the injury of the insured. 554 P.2d at 958. <u>McAlvain</u> emphasized that an insurance agent holds himself out to the public as having expertise in a complicated and specialized field and that the insured reasonably relies on the agent's superior knowledge and skill. <u>Id.</u> <u>McAlvain</u> held that in these circumstances an insurance agent should be held liable for negligence just as "an attorney, architect, engineer, physician or any other professional who negligently performs personal services." <u>Id.</u>; <u>see also</u> <u>Air Prods. & Chems., Inc. v. Eaton Metal Prods. Co.</u>, 272 F. Supp.2d 482, 497 (E.D. Pa. 2003) (predicting that Idaho would hold engineers liable in tort for economic loss because they held themselves out to public as having engineering expertise relevant to specialized function of pressure vessel inspection).

In <u>Duffin</u>, <u>supra</u>, the Idaho Supreme Court noted that the special relationship exception is not limited to a "professional or quasi-professional relationship," but that the exception extends to one who holds himself out as having expertise in the performance of a specialized function and knowingly induces reliance on his performance of that function. 895 P.2d at 1201. In <u>Duffin</u>, the Idaho Crop Improvement Association ("ICIA"), the only entity in Idaho authorized to certify seed potatoes, held itself out to the public as having expertise in the performance of a specialized function (seed certification) and induced reliance on that expertise. A purchaser of seed relied on the ICIA's expertise and bought the certified seed. Later, the purchaser discovered that the seed was defective and suffered economic losses. The Idaho Supreme Court held that the purchaser had a special

relationship with the ICIA because it had "engaged in a marketing campaign . . . to induce reliance by purchasers on the fact that seed ha[d] been certified." Id. On the other hand, the Federal-State Inspection Service ("FSIS") also inspected the purchaser's seed for diseases. The Idaho Supreme Court held that the purchaser did not have a special relationship with the FSIS because the purchaser did not show that FSIS had "actively sought to induce reliance on the part of purchasers of certified seed." Id.

In Ramerth, supra, an airplane owner hired a mechanic to perform an annual inspection and engine overhaul. The mechanic performed the services and certified that the repairs and inspection complied with FAA regulations. See 983 P.2d at 849. After the plane was sold, the buyer discovered that four spacers were missing from the engine mount and that the engine-mount nuts were therefore improperly torqued, which allegedly caused damage to the engine and airframe. See id. at 850. The buyer of the plane filed suit against the mechanic for negligence and breach of contract, seeking damages in part for the cost of repairing the airplane. The Idaho Supreme Court held that the buyer's claims for damages based on negligence were properly dismissed by the district court under the economic loss rule. See id. at 851. In particular, it found that the repair and inspection by the mechanic was "conceptually indistinguishable" from the FSIS inspection in Duffin. See id.[3]

No Idaho court has held that under the special relationship exception, a product seller or maker of a component part is liable in tort for economic loss to the buyer of the product. A product seller of course attempts to sell products based on its expertise or reputation in the industry and attempts to induce reliance on the part of purchasers. Even so, an ordinary buyer-seller relationship

---

[3] On appeal, the buyer argued that the damages alleged fell within an exception to the economic loss rule, but the Idaho Supreme Court refused to consider the argument because the buyer did not raise it in the district court. See id.

-13-

does not satisfy the special relationship exception to the economic loss rule. See Mannos v. Moss, 155 P.3d 1166, 1174 (Idaho 2007) (Duffin does not extend to business relationship between purchaser and seller); Millenkamp, 391 F. Supp.2d at 879 (sale of product not comparable to services by architect, engineer or physician). In Millenkamp, a buyer of milk permeate for cattle feed filed suit for economic loss because the seller failed to label the product and provide directions and precautionary statements required by Utah law. The United States District Court for the District of Idaho refused to find a special relationship between the buyer and seller based on the Utah statute and regulations which required defendant to adequately label its product. The court noted as follows:

> Plaintiffs contend the Idaho statute and regulations create a special relationship between the parties and warrants a different allocation of the risk. This argument, however, does not fall under any of the recognized exceptions to the economic loss rule. Neither the special relationship exception nor the unique circumstances exception apply in this case. Defendant did not perform any personal services for Plaintiffs; rather, the parties engaged solely in a sale of a product. Such activity is not comparable to the services performed by an architect, engineer, or physician, which the Idaho Supreme Court has recognized as creating a special relationship. Moreover, while the manufacture and sale of cattle feed could be considered a specialized function, no evidence has been presented establishing that Defendant represented its expertise to the public, or that it knowingly induced reliance on its performance because of such expertise. To find that a special relationship exists between all individuals subject to the statute and regulations at issue in this case would be to disregard the "extremely limited" application of the exception to the economic loss rule.

391 F. Supp.2d at 879.

Here, the Court finds that the "special relationship" exception does not apply to the buyer-seller relationship between plaintiffs and Cessna. See Duffin, 895 P.2d at 1201 (law of negligence extends protection to party's economic interest in "extremely limited group of cases"); Clark, 581 P.2d at 794 (UCC adequately defines rights of parties as to economic losses; judicial expansion of negligence law to cover such losses would add more confusion in area already plagued with

overlapping and conflicting theories of recovery); Millenkamp, 391 F. Supp.2d at 879 (sale of product not comparable to services of architect, engineer or physician). As noted above, plaintiffs could have negotiated a different allocation of risk in their contract to purchase the plane from Cessna, but they declined to do so. In the alternative, even if the special relationship exception could apply in the buyer-seller context, plaintiffs have not alleged or presented evidence that Cessna represented to the public its alleged expertise in de-icing systems. The fact that it certified the plane for flight in icing conditions is insufficient to show that it held itself out to the public as having specialized expertise in this area.[4] See Ramerth, 983 P.2d at 850-51 (repair and inspection by mechanic who certified compliance with FAA regulations is "conceptually indistinguishable" from FSIS inspection in Duffin which was insufficient to create special relationship); Duffin, 895 P.2d at 1201 (no special relationship between purchaser and FSIS who certified seed for diseases because purchaser did not show that FSIS had "actively sought to induce reliance on the part of purchasers of certified seed"). For these reasons, plaintiffs have not demonstrated a genuine issue of material fact whether they had a "special relationship" with Cessna.[5]

### III.   Conclusion

For reasons stated above, plaintiffs have not established a genuine issue of material fact whether their losses are recoverable under the Idaho economic loss rule. Accordingly, the Court sustains defendants' motions.

**IT IS THEREFORE ORDERED** that Cessna Aircraft Company's Motion For Summary

---

[4]   JoAnne Wolters, President of Spirit Air, stated that in purchasing the plane, Spirit Air relied on the fact that the plane was certified for flight into known icing conditions, see Declaration Of JoAnne E. Wolters ¶ 5, attached to Plaintiffs' Consolidated Response (Doc. #580), but plaintiffs have not shown that Cessna "actively sought to induce reliance" on the part of purchasers of planes.

[5]   Likewise, plaintiffs have not shown that they had a special relationship with Goodrich based on the fact that it designed and supplied the de-icing system.

Judgment Against Plaintiffs Spirit Air, Inc. And Mountain Bird, Inc. (Doc. #548) filed August 15, 2008 be and hereby is **SUSTAINED**.

**IT IS FURTHER ORDERED** that Defendant Goodrich Corporation's Motion For Judgment On The Pleadings (Doc. #547) filed August 15, 2008 be and hereby is **SUSTAINED**.

**IT IS FURTHER ORDERED** that Plaintiffs Mountain Bird, Inc. And Spirit Air's Request For Oral Argument On Defendant Goodrich Corporation's Motion For Judgment On The Pleadings And Defendant Cessna Aircraft Company's Motion For Summary Judgment (Doc. #588) filed September 30, 2008 be and hereby is **OVERRULED**.

**IT IS FURTHER ORDERED** that Cessna Aircraft Company's Request For Oral Argument On Its Motion For Summary Judgment Against Plaintiffs Spirit Air, Inc. And Mountain Bird, Inc. (Doc. #550) filed August 15, 2008 be and hereby is **OVERRULED**.

**IT IS FURTHER ORDERED** that the Request For Oral Argument On Defendant Goodrich Corporation's Motion For Judgment On The Pleadings (Doc. #551) filed August 15, 2008 be and hereby is **OVERRULED**.

Dated this 17th day of December, 2008 at Kansas City, Kansas.

s/ Kathryn H. Vratil  
KATHRYN H. VRATIL  
United States District Judge