IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

|  |  |
|---|---|
| IN RE: CESSNA 208 SERIES AIRCRAFT ) <br> PRODUCTS LIABILITY LITIGATION ) <br> ) <br> ) <br> (This document relates all cases) ) <br> ) <br> ) <br> _____) | MDL No: 1721 <br><br> Case No: 05-md-1721-KHV |

**MEMORANDUM AND ORDER**

In this is a multidistrict product liability action, Plaintiffs assert claims against various defendants, including Cessna Aircraft Company ("Cessna"), arising out of aircraft crashes of Cessna Caravans, Model 208B. Pursuant to 28 U.S.C. § 1407, the Judicial Panel on Multidistrict Litigation transferred the cases to the District of Kansas for coordinated or consolidated pretrial proceedings.

This matter comes before the Court on Plaintiffs' Motion to Lift Protective Order as to Certain Cessna Documents (doc. 669). Plaintiffs request that the Court lift the protective order as to a thirteen-slide PowerPoint presentation prepared by Cessna about the miscalibration of the Cessna 208B's stall warning system.[1] Plaintiffs seek to lift the protective order as to this document citing the pressing public safety need for this information. Defendant Cessna opposes the motion. It argues that the slides contain proprietary, commercial information and were designated as "confidential information" under the parties' Protective Order (doc. 19) over a year ago so Plaintiffs' motion is untimely. It further argues that the motion contains no reason for the Court to conclude that Cessna was not justified in designating the PowerPoint slides as confidential. Finally, it

---

[1] The document has been filed under seal as Exhibit E (doc. 671).

disputes Plaintiffs' assertion of a public safety need to lift the protective order because it has issued a Service Bulletin to the owners and operators of Cessna 208Bs regarding the stall warning system miscalibration.  As set forth below, the motion is denied.

## I.     Factual Background

In early 2005, Cessna conducted a series of experimental flight tests in the 208B using artificial ice shapes to simulate the build-up of ice on the airplane. The purpose of these flight tests was to evaluate how the 208B handled in a variety of configurations and attitudes with the artificial ice shapes adhering to the airplane.  During these test flights, Cessna test pilots noted that the aural stall warning horn did not sound when the test airplane approached stall speed.  This was directly at odds with the results Cessna test pilots had obtained while flying the airplane in real icing conditions, in which the horn sounded when the airplane neared stall speed.

Cessna reported the results of its testing to the FAA, and specifically the failure of the stall warning horn to sound with artificial ice shapes on the test airplane.  Based on these results, the FAA asked Cessna to conduct further testing on several topics, including the stall warning horn.

Cessna conducted a survey of the entire 208B fleet.  At the conclusion of the survey, Cessna employees produced a thirteen-slide, PowerPoint presentation about the 208B's stall warning system miscalibration.

## II.    The Parties' Protective Order

On May 1, 2006, the Court entered the parties' jointly- proposed Protective Order, which limits the dissemination and disclosure of information or material designated by any party as confidential information. The Protective Order applies to discovery materials produced or obtained through the discovery process containing: (a) Confidential, proprietary, or trade secret information

involving the design, development, and manufacture of the aircraft and components at issue, or (b) Financial information for any of the parties.

Paragraph 2 of the Protective Order sets forth the procedure if a party disagrees with the confidentiality designation:

> In the event, *at any stage of the proceedings*, any party to this multidistrict litigation disagrees with designation of any information as CONFIDENTIAL INFORMATION, the parties shall first try to resolve such dispute in good faith on an informal basis.  If the dispute cannot be resolved informally, the party opposing the confidentiality designation may apply for appropriate relief to this Court, which will be permitted to conduct an in camera inspection of the challenged materials.[2]

It further provides that "[t]he party seeking confidentiality of the information shall have the burden of establishing that the information is entitled to confidential treatment."[3]  The Protective Order contains no deadlines or provisions with respect to its subsequent modification, amendment, or rescission.

### III. Timeliness of the motion

As a preliminary matter, Defendant Cessna urges the Court to deny Plaintiffs' motion as untimely.  It argues that the document at issue was produced and designated as confidential more than a year ago.  During that time, Plaintiffs used the slides during the depositions of at least three Cessna employees.  Cessna argues that Plaintiffs' delay in filing their motion is inconsistent with the spirit of the Court's policy requiring litigants to raise and resolve discovery disputes promptly.

The Court declines to deny Plaintiffs' motion on the grounds it is untimely.  The parties'

---

[2] Protective Order (doc. 19) (emphasis added).

[3] *Id.*

3

Protective Order contains no deadline or time restrictions for challenging a confidentiality designation or for filing any motion to lift, modify, or amend any of its provisions. Instead, with respect to a confidentiality designation, it permits a party to challenge the designation "at any stage of the proceedings." Cessna has not otherwise cited any applicable rule that limits when a party can file a motion to modify or lift a protective order. The thirty-day deadline for filing motions to compel discovery, contained in D. Kan. Rule 37.1(b), is not applicable to Plaintiffs' motion to lift the protective order. The Court will therefore consider the motion on its merits.

**IV.    Plaintiffs' request to lift the protective order as to the PowerPoint presentation**

The protective order in this case was entered upon the joint motion of the parties and is classified as a blanket protective order.[4] The court entered the parties' proposed blanket protective order upon a threshold showing of good cause under Fed. R. Civ. P. 26(c) that the discovery will involve confidential, proprietary, or trade secret information involving the design, development, and manufacture of the aircraft and components at issue. To date, the Court has not reviewed any confidentiality designations made under the Protective Order, including Cessna's confidentiality designation as to the PowerPoint presentation at issue in this motion. Plaintiffs, however, state in their reply brief that they are not challenging Cessna's original confidentiality designation. They are instead requesting that the Court lift the protective order as to this document because the public

---

[4]Blanket protective orders place upon the parties themselves, or others from whom discovery is sought, the initial burden of determining what information is entitled to protection. Normally, a blanket protective order requires that counsel for a producing party review the information to be disclosed and designate the information it believes, in good faith, is confidential or otherwise entitled to protection. The designated information is thereafter entitled to the protections afforded by the blanket protective order unless the designation is objected to by an opposing party. Judicial review of a party's designation as confidential occurs only when there is such an objection which the parties cannot resolve by agreement. *See Signator Investors* cases, *infra*, note 6.

safety need for the information trumps any proprietary interest by Cessna.

Under the terms of the parties' Protective Order, Cessna, as the party seeking confidentiality of the information contained in the document, has the burden of establishing that the information is entitled to confidential treatment.[5] This is consistent with cases in the District of Kansas that place the burden of proving confidentiality under a blanket protective order on the party asserting the claim of confidentiality. In the *Signator Investors* cases,[6] the court held that "the party seeking the [confidentiality] protection bears the burden of proof to justify retaining a designation of confidentiality," and the burden of proving confidentiality under a blanket protective confidentiality order "never shifts from the party asserting that claim [of confidentiality], only the burden of raising that issue."[7]

### A.     Standard for modifying a blanket protective order

While the parties' Protective Order indicates which party has the burden of establishing confidentiality, it contains no provisions with respect to who has the burden in moving to modify its provisions or lift its protections as to any documents or information. So the Court must look to case law for guidance on who bears the burden in seeking to lift its protections as to specific documents, as well as the standard or factors to be used by the Court to determine ultimately

---

[5] *See* Protective Order (doc. 19) ¶ 2.

[6] *Foley v. Signator Investors, Inc.*, No. 03-2099-KHV, 2003 WL 22844110, at *2 (D. Kan. Nov. 25, 2003); *Murray v. Signator Investors, Inc.*, No. 03-2211-CM, 2003 WL 22844123, at *2 (D. Kan. Nov. 25, 2003); *Tucker v. Signator Investors, Inc.*, No. 03-2295-CM, 2003 WL 22844113, at *2 (D. Kan. Nov. 25, 2003); *Cawley v. Signator Investors, Inc.*, No. 03-2176-CM, 2003 WL 22843185, at *2 (D. Kan. Nov. 25, 2003); *Slusser v. Signator Investors, Inc.*, No. 03-2175-CM, 2003 WL 22844154, at *2 (D. Kan. Nov. 25, 2003); *Bartholomees v. Signator Investors, Inc.*, No. 03-2181-GTV, 2003 WL 22843174, at *2 (D. Kan. Nov. 25, 2003).

[7] *Id.*

whether to lift the protective order and allow disclosure of the confidential and proprietary document.

The Tenth Circuit has noted that blanket protective orders are becoming standard practice in complex cases.[8] The Tenth Circuit recognized the usefulness of these types of protective orders:

> They allow the parties to make full disclosure in discovery without fear of public access to sensitive information and without the expense and delay of protracted disputes over every item of sensitive information, thereby promoting the overriding goal of the Federal Rules of Civil Procedure, "to secure the just, speedy, and inexpensive determination of every action."[9]

The modification of a blanket protective order, like its original entry, is left to the sound discretion of the district court.[10] The Court of Appeals for the First Circuit has recognized the importance of the inherent authority of the court to modify a protective order:

> a protective order, like any ongoing injunction, is always subject to the inherent power of the district court to relax or terminate the order, even after judgment. This retained power in the court to alter its own ongoing directives provides a safety valve for public interest concerns, changed circumstances or any other basis that may reasonably be offered for later adjustment.[11]

This safety valve assumes particular importance in the context of blanket protective orders, which are generally entered without extensive, if any, balancing of affected interests.[12] The uncontested nature of blanket protective orders and the absence of any judicial determination of good cause with

---

[8]*United Nuclear Corp. v. Cranford Ins. Co.*, 905 F.2d 1424, 1427 (10th Cir. 1990) (citing Manual for Complex Litigation (Second) § 21.431 (1985)).

[9]*Id.* (citing Fed. R. Civ. P. 1).

[10]*Id.*

[11]*Poliquin v. Garden Way, Inc.*, 989 F.2d 527, 535 (1st Cir. 1993).

[12]Laurie Kratky Dore, *Secrecy by Consent: the Use and Limits of Confidentiality in the Pursuit of Settlement*, 74 Notre Dame L. Rev. 283, 356 (Jan. 1999).

6

respect to specific documents arguably make such confidentiality orders particularly vulnerable to subsequent modification.[13]

A protective order is always subject to modification or termination for good cause.[14] And as long as a protective order remains in effect, the court that entered the order retains the power to modify it.[15] Even where the parties have consented to the entry of a protective order, they may later seek its modification to allow dissemination of information received.[16]

In *Manildra Milling Corp. v. Ogilvie Mills, Inc.*,[17] the court, in ruling on a motion seeking a wholesale declassification of confidential information under a blanket protective order, placed the burden on the party seeking dissolution of the protective order. The *Manildra* court relied upon the Eastern District of Pennsylvania's decision, *Zenith Radio Corp. v. Matsushita Elec. Industrial Co.*,[18] for the principle that the "party seeking dissolution [of a longstanding protective order] bears the burden of showing that intervening circumstances have removed potential prejudice from disclosure that the protective order was initially intended to protect."[19]

In this case, the Court determines that Plaintiffs, as the moving party, should have the burden of persuasion on their motion to lift the protective order. Plaintiffs agreed to the protective order

---

[13] *Id.*

[14] Manual for Complex Litigation (Fourth) § 11.432 (2004).

[15] *United Nuclear,* 905 F.2d at 1427.

[16] Manual for Complex Litigation (Fourth) § 11.432 (2004).

[17] Civ. A. No. 86-2457-S, 1991 WL 17610, at *1 (D. Kan. Jan. 31, 1991).

[18] 529 F. Supp. 866, 894 (E.D. Penn. 1981).

[19] *Id.* (citing *Zenith Radio Corp.,* 529 F. Supp. at 894).

7

restricting the disclosure of confidential, proprietary, or trade secret information involving the design, development, and manufacture of the aircraft and components at issue, and the Court found sufficient good cause to enter the parties' joint protective order.  They are now seeking to modify the protective order by lifting its disclosure restrictions as to the stall warning system PowerPoint presentation prepared and designation as confidential by Cessna.  As the moving party, Plaintiffs have the burden to justify disclosure of this document.

### B. Whether Plaintiffs have met their burden to lift the protective order

The Court next considers whether Plaintiffs have met their burden to justify disclosure of the stall warning PowerPoint presentation.  Plaintiffs argue that Cessna's issuance of the December 15, 2008 Service Bulletin does not negate the importance of making the PowerPoint presentation public information.  They claim that the Service Bulletin does not contain nearly the amount of information found in the PowerPoint presentation.  It contains little of the factual details of the miscalibration, does not explain the origins of the error, the legal ramifications of the error, or the potential danger of the error.  The most glaring deficiency, according to Plaintiffs, is that the Service Bulletin does not provide a complete list of serial numbers for 208B aircraft that must be adjusted and/or reset.  Thus, certain affected aircraft may not be on the list.

Cessna points out that, on December 15, 2008, it issued Service Bulletin CAB08-8, which informs registered owners and operators of the 208B aircraft of the stall warning horn miscalibration.  The Service Bulletin explains the purpose of bulletin, provides an estimate of the amount of labor necessary to accomplish the adjustment, and specifies the parts needed to do so.  It then provides step-by-step instructions on how the adjustment can be accomplished, along with three pages of drawing and diagrams illustrating how the adjustment can be made.  It is the result

of months of effort by Cessna engineers, technical publications writers, and product support personnel to communicate precise information to 208B operators about the nature of the miscalibration issue and, if found, how to correct it. Cessna argues that if Plaintiffs' real purpose in filing their motion was to make available to the public information about the stall warning miscalibration, then the Service Bulletin, and not the PowerPoint presentation, a preliminary report prepared more than 18 months ago, is the most effective way of communicating current information about the issue.

In assessing requests to modify, courts balance the potential harm to the party seeking protection against the requesting party's need for the information and the public interest served by its release.[20] If good cause for the protective order existed when entered, only a change in circumstances by which the good cause is either removed or outweighed by other interests would justify modification.[21] In *Public Citizen v. Liggett Group. Inc.*,[22] the First Circuit Court of Appeals upheld modification of a protective order because the party seeking modification had met its burden of showing that "the reasons underlying the initial promulgation of the order in respect to the particular document sought no longer exist[ed]; and the district court made a reasoned determination that public interest considerations favored allowing counsel to make those particular documents public."[23]

Good cause requires balancing the harm to the party seeking the protective order and the

---

[20] Manual for Complex Litigation (Fourth) § 11.432 (2004).

[21] *Taylor v. Solvay Pharm., Inc.*, 223 F.R.D. 544, 549 (D. Colo. 2004).

[22] 858 F.2d 775 (1st Cir. 1988), *cert. denied* 488 U.S. 1030 (1989).

[23] *Public Citizen*, 858 F.2d at 791-792.

importance of disclosure to the public.[24] Some factors the court may consider in making this determination, include "privacy interests, whether the information is important to public health and safety and whether the party benefitting from the confidentiality of the protective order is a public official."[25]

In this case, the Court finds that Plaintiffs have not met their burden to justify lifting the protective order as to the stall warning PowerPoint presentation. Plaintiffs have not shown that public safety concerns trump Cessna's proprietary interest in the confidential document. While Plaintiffs have established a public safety concern for information regarding the 208B's stall warning system miscalibration, the Court finds that any public safety need for this information has been met by Cessna's reporting the stall warning miscalibration issue to the FAA and its subsequent issuance of the Service Bulletin to registered owners and operators of the 208B aircraft. This Service Bulletin contains detailed instructions on adjusting or resetting the stall warning margin, along with three pages of drawing and diagrams illustrating how the adjustment can be made. Plaintiffs have not convinced the Court that lifting the protective order as to the PowerPoint presentation, a preliminary report prepared more than 18 months ago, would be a more effective way of communicating current information to the public about the issue. The Court thus finds that Plaintiffs have not met their burden to lift the protective order as to the confidential PowerPoint presentation.

IT IS THEREFORE ORDERED THAT Plaintiffs' Motion to Lift Protective Order as to Certain Cessna Documents (doc. 669) is denied, as set forth herein.

---

[24]*Wiggins v. Burge*, 173 F.R.D. 226, 229 (N.D. Ill.1997).

[25]*Id.*

IT IS SO ORDERED.

Dated in Kansas City, Kansas on this 7th day of April, 2009.

s/ David J. Waxse  
David J. Waxse  
United States Magistrate Judge

cc:     All counsel